IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

NETKEY, INC )
)
Plaintiff; )
)
versus )
)
) Civil Action Number
) 300CV1364 (AVC)
NETSHIFT SOFTWARE LTD. )
AUTOMOBILE CLUB OF HARTFORD, AND )
MONTEGONET, LLC )
)
Defendants. )
)

## FREDERICK SAYWARD EXPERT WITNESS REBUTTAL REPORT

I, Dr. Frederick G. Sayward, make this expert rebuttal report on behalf of NetKey, Inc. I am a Senior Research Scientist at Yale University's Center for Medical Informatics, Temple Medical Center, 40 Temple Street, New Haven, CT 06510.

SCOPE OF REBUTTAL REPORT
I have been asked by Plaintiff to analyze and rebut "Defendants' Endorsement Of Expert Witnesses Mitchell Hoffman, Andy Pinkard and Timothy Daw" (hereinafter "Invalidity Report"). The Invalidity Report is not signed by the alleged experts, and does not detail differences in the views of each of the individuals. Accordingly, I have treated the Invalidity Report as though it were the views of a single person. I only notice one mention of infringement in the Invalidity Report and rely upon my prior Expert Report on Infringement to rebut it. There is no mention in the Invalidity Report of infringement of under the doctrine of equivalents or any of the factors relating thereto, and so there is nothing to rebut on this issue.

I also note that the only obviousness arguments made in the Invalidity Report relate to the obviousness of claims based upon the extension of features and/or functionality disclosed in a single reference. Since the Invalidity Report offers no opinions on the combination of references, I have nothing to rebut in this regard. Further since the Invalidity Report offers no opinion on the level of one of



1

ordinary skill in the art at the time the invention was made, I have offered no rebuttal opinion on that issue. Finally, since the Invalidity Report offers no opinion on the level of ordinary skill in the art at the time the invention was made, there is no basis expressed in the Invalidity Report for how the determination of obviousness can be made, and accordingly I have offered no rebuttal on this issue. There is no indication of what field of art the invention pertains to, or to what level of education and/or experience is necessary to make a person one of ordinary skill. There is also no delineation of what knowledge would have been known at the time the invention was made as opposed to what knowledge currently exists in the pertinent field.

## ANALYSIS OF DEFENDANTS EXHIBITS 5, 6 and 7:

- Exhibit 5: The World Wide Web Conferences, 1994-1996. Kiosk Papers

- Exhibit 6: The Internet Sampler: A Mosaic-Based Museum Kiosk About the Internet. Rakov, October 1994 conference.

- Exhibit 7: Consists of Two presentations from the October 1994 conference.

I have analysed the three exhibits, Defendants' numbers 5, 6, and 7.

The supplied material, while claimed to be papers from conferences, is in reality in the form of un-published and un-reviewed notes. Without further testimony from persons attending the conference and citations, such as references to a published conference proceeding or journal articles, there is no evidence when the material was written, in some cases by whom it was written, and whether it was ever published. At best, one could describe defendant's exhibits as "drafts or notes".

Defendant has taken the position that the researchers were too busy to stop and properly document their work, the implication being that the rest of the world should excuse them and accept them as pioneers eight years after the fact. The rest of the world, however, rejects such a position, as it leads to undated, incomplete, unsubstantiated, and unverifiable work, and often incorrect claims.

I give specific attention to the three drafts cited most frequently in Defendant's Expert Witness Report:

1. "Progress Report —allegedly dated 15 July 1995 Applied Informatics (#36-40-94065)", located at
   http://www.cpmc.columbia.edu/appldinf/prog95c.html

No authorship is given. Defendant's expert report claims George Hripcsak, M.D. is the author and attributes a quote to him. I found George Hripcsak, M.D., hripcsak@columbia.edu listed as the contact person for a general web site, but that does not imply that he authored the progress report.

At the same website we find an abstract "Applied Informatics: Using the NII to Coordinate Health Care" alledgedly submitted to 1996 American Medical Informatics Association Spring Congress. George Hripcsak, Nilesh L. Jain, Charles Knirsch, Tom Frieden, Richard C. Stazesky, Jr., Terry Fulmer, Ariel Pablos-Mendez1 are listed as the authors.

2. The Internet Sampler: A Mosaic-Based Museum Kiosk About the Internet. Rakov, alleged October 1994 conference.

3. Tosolini. The web URLs are listed.

http://www.filelibrary.com/contents/dos/9/3.html. This web page does not exist.
http://www.cilea.it/collabora/GARR-NIR/nir-it-2/atti.html In Italian. No translation provided by Defendants and therefore it is not possible to even review the content of this document.
http://scholar.lib.vt.edu/ejournals/vpiej-1/vpiej-1.log9409.html. This web page does not exist.
http://www.inf.ethz.ch/department.IS/ea/kiosks/WWW95/proceed.html. This is defendant's exhibit 5 and contains a 4 page abstract by Paolo Tosolini, again of indeterminate date, entitled: "MultiMedia WWW PC: How to distribute Interactive applications on the Internet".

## ANALYSIS OF DEFENDANT'S EXPERT REPORT:

### Claim 1 of the '071 Patent

**A self-service computer, comprising:**
- a monitor having a display screen;
- a microprocessor coupled to said monitor for controlling what is displayed on said screen;
- browser software executable on said microprocessor for accessing and displaying documents in response to user input, the graphical user interface (GUI) of said browser software comprising controls for said browser software and a document viewing area; and

3

- **at least one image positioned for display on said screen so as to mask the controls for said browser software, said image thus rendering the controls inaccessible to a user of the self-service computer to resist tampering with said browser software.**

Masking means hiding or concealing. Quoting from Microsoft Encarta College Dictionary:

**Mask:** n. "...**2 CONCEALING THING** something that conceals or disguises something else ... **v.** "**1 HIDE** to conceal or disguise something..."

There are several ways to achieve masking in software. One way is to cover something that is visible (hiding), another way is not to reveal something (conceal).

Quoting from 5,761,071 Column 4 lines 4-14:
"These overlying windows and bitmap images are created by a GUI control software developed by the inventors which is currently available commercially as NetKey. It is understood that the same result may be achieved by coding a browser together with the GUI desired for use in a kiosk as a single executable program. This could conveniently be achieved by including browser API calls into the NetKey product. It is further understood that in such a product, overlaying windows would not need to be used and these would be no need to modify an existing GUI."

Defendant has chosen to ignore the express language in the patent and argue that the claim is somehow limited to "overlaying windows". In fact, NetShift Release 5.5, overlays bitmap images which mask at least one browser control button, exactly as described in the patent. See plaintiff's expert report for additional details on the issue of infringement. Further, Netshift's use of masking in this instance is critical to the success of their product.

### The Columbia Project

Defendants cite "The Columbia Project" as prior art to claim 1 of '071. They reference the following web URL:
   http://www.cpmc.columbia.edu/appldinf/prog95c.html

References to web URLs are not reliable as evidence of prior art since there is no common way to date and source the material at the web URL. Thus, we have no way to date the material at the above URL. Nor do we know for sure who the author is since this unpublished set of notes does not have an author listed. Further, there is no way to know when this material was last edited.

Even if we, for the sake of argument, accepted this material as prior art, the material **as it reads today** does not show and does not teach how to mask browser controls. The document reads:

> "We needed to prevent patients from exiting the Web browser and running other applications (such as using a file manager to delete files). There are two solutions. Some Web browsers provide a "presentation" mode that uses the entire screen for information display; there is no menu bar, so users are unable to exit the application without a keyboard. The other solution is to run any Web browser, but cover the menu bar with a dummy application that always stays on top of the Web browser's menu bar. It looks to the user like a grey bar, and it prevents them from accessing any of the menu functions (including "exit"). We chose the latter solution."

As seen, this just indicates how to mask the menu bar of a browser. Buttons, keyboards, and other browser controls are not considered. It is not until the purported date of January 15, 1996 that the Columbia Project discloses how to fully implement their kiosk and handle arbitrary controls. This was done with the inclusion of the URL

http://www.cpmc.columbia.edu/appldinf/kioskhlp.html

as referenced in their purported January 15, 1996 status report listed at URL

http://www.cpmc.columbia.edu/appldinf/prog96a.html

Thus, the Columbia Project does not disclose or suggest the subject matter of claim 1 of '071.

Based on the above arguments, it is also my opinion that The Columbia Project URLs and documentation are not prior art with respect to '071 and '848.

**Tosolini**

Defendants Expert's Report claims the following:

> "It could also be said that Tosolini disclosed all the elements of Claim 1 of the '071. Claim 1 requires only that the controls be masked so that they are not accessible to a user of the Kiosk. Tosolini's application does this without any modification, and thus anticipates Claim 1."

Leaving aside the equivocation in this argument, the first three URLs referenced by defendant to support their claims either do not exist or are in a foreign language for which no translation has been provided such that they can not be analyzed. The fourth reference Paolo Tosolini: "MultiMedia WWW PC: How to distribute Interactive applications on the Internet", does not discuss anything about kiosk systems. Further, defendant's exhibit 5 is described as a conference proceeding, however, reference

http://www.inf.ethz.ch/department.IS/ea/kiosks/WWW95/proceed.html indicates that Tosolini failed to show up at the conference and thus his abstract was not even presented or published   Defendant's claim that this is prior art which anticipates claim 1 is without justification.

Based on the above arguments, it is my opinion that Tosolini is not prior art with respect to '071 and '848.

Defendant makes no additional argument for invalidity of Claim 1 of '071.

### Claims Dependent on Claim 1

Since none of the alleged prior art renders claim 1 of the '071 patent invalid, and since claims dependent upon claim 1 share the same limitations, it is also my opinion—for all the reasons expressed above—that all claims depending from claim 1 of the '071 patent are not invalid.

### Claim 2 of the '071 Patent

**The self-service computer of claim 1, wherein said image includes buttons selectable via said screen for initiating browser software commands.**

### Rakov (The Internet Sampler)

This is an <u>unpublished</u> document which is not prior art.  The document itself states "The Internet Sampler is ... currently under development for the Computer Museum of Boston, and scheduled to go on exhibit late October of 1994."  There is no indication as to whether the implementation ever finished, or if it was abandoned.  There is no indication as to a date when the system actually went into service, if ever, and the document itself does not describe the system in anything near to the detail required to disclose all elements of any claim of the '071 patent, much less claim 2.

Apparently, he Boston Computer Museum closed in 1999 and the Computer Museum History Center, Moffett Field, California took possession of its equipment.  (see http://www.mos.org/tcm/tcm.html).  A search of the web site for the Computer Museum History Center (http://www.computerhistory.org/) for "kiosk" yielded no results.

Based on the above, it is my opinion that Rakov is not prior art with respect to the '071 patent.

Defendant also claims "Additionally, Paolo Tosolini showed the use of buttons in this context..."  However, as explained in the discussion above concerning claim

6