- 9 -

functions are disabled, the kiosk is at the mercy of any user who would exit a program and/or re-boot the computer. NetKey had itself set up kiosks, beginning in 1983, and must have disabled system functions in doing so.

*Mosaic also disabled system functions as early as 1994 (Mosaic was an early Browser that spawned Netscape released on October 11, 1994).*

*From Help On Mosaic Version 2.5 beta 2*

*http://archive.ncsa.uiuc.edu/SDG/Software/Mosaic/Docs/help-on-version-2.5b.html*

*Options included:.*

- ξ  *-kiosk command-line flag and Boolean X resource, kiosk to remove menubar and all control bar options except back, forward, home, and close.*

- ξ  *-kioskNoExit command-line flag and Boolean X resource kioskNoExit for kiosk mode without the close button. When true, the user has no way to exit Mosaic (without a window manager or a keyboard).*

*See also:*

*Lynx which is a full screen hypertext browser for www*
*Version 2.3 –which was released in April 94*
*(http://www.w3.org/History/1993/WWW/Lynx/ )*

**The User Guide makes it quite clear that there were built in options to enable or disable various system functions.**

http://www.cc.ukans.edu/lynx_help/Lynx_users_guide.html
now available (mind the wrap)
http://web.archive.org/web/19971210163518/http://www.cc.ukans.edu/lynx_help/Lynx_users_guide.html

Options include:
    -exec



    enable local program execution
-locexec
    enable local program execution from local files only
-noexec
    disable local program execution (default)

-restrictions
allows a list of services to be disabled selectively and takes the following form: "lynx -restrictions=[default], [all], [inside_telnet], [outside_telnet], [shell], [editor], [bookmark], [option_save], [print], [file_url], [download], [exec]"

all
restricts all options.

bookmark
disallow changing the location of the bookmark file.

default
same as command line option -anonymous. Disables default services for anonymous users. Currently set to all restricted except for: inside_telnet, outside_telnet, and goto. Defaults are setable within userdefs.h.

download
disallow saving binary files to disk in the download menu.

editor
disallow editing.

exec
disable execution scripts.

file_url
disallow using Goto to go to file: URL's.

goto
disable the 'g' (goto) command.

inside_telnet
disallow telnets for people coming from inside your domain.

options_save
disallow saving options in .lynxrc.

outside_telnet
disallow telnets for people coming from outside your domain.

print
disallow most print options.

shell
disallow shell escapes.

This shows that it disabling system functions was an easy and standard option in this browser program



- 11 -

12. The self-service computer of claim 1, wherein the access of said browser software includes the world wide web (WWW).

This is not new. All the W3 Conference papers are on how to connect a kiosk to the web – e.g. Rakov W3 Conference generally: http://www.w3.org/Conferences/Overview-WWW.html

13. The self-service computer of claim 1, further comprising an attract loop which appears on said display screen when there has been no user input for a predetermined period of time.

This is not new. The Columbia project used a Marquis attract mode. This consisted of an attract sentence which looped on the screen. See:

http://www.cpmc.columbia.edu/appldinf/prog95c.html; and
http://www.cpmc.columbia.edu/appldinf/kioskhlp.html

14. A self-service kiosk system, comprising:

a monitor having a display screen;

a microprocessor coupled to said monitor for controlling what is displayed on said screen;

browser software module executable on said microprocessor for accessing and displaying documents in response to user input; and

security control software module executable on said microprocessor, said security control software module being programmed to disable system functions available to a user of the kiosk system to resist tampering with the kiosk system during operation of the kiosk system.

Disabling system functions was well known. See discussion under Claim 11.

15. The self-service kiosk system of claim 14, wherein said security control software module is further programmed to limit documents accessible to said browser software module by limiting uniform resource locators (URLs) accessible to said browser software module.



- 12 -

- Limiting URL's was well known. See discussion of Claim 10.

16. A self-service computer, which comprises:

a monitor having a display screen;

a keyboard and a mouse;

a microprocessor electrically coupled to said monitor for controlling what is displayed on said screen;

software including browser application programming interface (API) calls executable on said microprocessor for accessing and displaying documents in response to user input, the graphical user interface (GUI) of said software displaying only the document viewing area; and

security control software executable on said microprocessor, said security control software being programmed to disable system functions available to a user of the self-service computer to resist tampering with the self-service computer during operation of the self-service computer.

Disabling system functions is discussed above under Claim 11


17. A method for providing a self-service computer, comprising the steps of:

providing a monitor with a display screen;

providing browser software for accessing and displaying documents in response to user input, the graphical user interface (GUI) of said browser software comprising controls for said browser software and a document viewing area; and

masking the controls for said browser software with at least one image so that the controls are inaccessible to a user of the self-service computer.

This known and obvious for the same reasons as Claim 1.

18. The method of claim 17, wherein said image includes buttons selectable via said screen for initiating browser software commands.

See discussion under Claim 2.

19. The method of claim 17, further comprising the step of masking said GUI of said browser software so that only the document viewing area is not covered.

See discussion of Claims 3 and 4.

20. The method of claim 17, further comprising the step of limiting documents accessible to said browser software by limiting uniform resource locators (URLs) accessible to said browser software.

See discussion of Claim 10.

21. The method of claim 17, further comprising the step of updating said browser software remotely.

See discussion of Claim 7.

22. A method for providing a self-service kiosk system, comprising the steps of:

providing a monitor with a display screen;

providing browser software for accessing and displaying documents in response to user input; and

disabling system functions available to a user of the kiosk system to resist tampering with the kiosk system during operation of the kiosk system.

See discussion of Claim 11.

Second NetKey Patent – The "848" Patent

Claims - Filed June 1, 1998

1. A self service computer, comprising:

a monitor;

a microprocessor coupled to said monitor for controlling what is displayed on said monitor;

software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of documents in the viewing window in response to user input, said software capable of performing a plurality of functions with respect to the plurality of documents; and

software executable on said microprocessor for displaying at least one image on said screen so as to provide navigational controls for at least one authorized function of said accessing and displaying software with respect to the plurality of documents, but without also permitting tampering with said accessing and displaying software by not displaying images providing controls for unauthorized functions with respect to the plurality of documents.

    Claim 1 is fully embodied in NetShift 1.4, which has been for sale in the U.S. since May, 1997; as well as in NetKey 2.0 and 2.01, which have been on sale in the U.S. since January and May, 1997, respectively.

    NetKey has asserted that the subject matter of Claim 1 was disclosed in the '071, and is therefore entitled to the filing date of the '071, thereby pre-dating the sales of NetShift 1.4 and NetKey 2.0 and 2.01. Since each Claim of the '848 essentially includes the elements of Claim 1, usually with only minor additions or changes, the arguments for and against the validity of Claim 1 affect the validity of each Claim of the '848.

    The subject matter of Claim 1 of the '848 is not disclosed in the '071 so as to indicate that the inventors had invented it as of the filing date of the '071. Review of the '071, the '848, and the relevant art clearly indicates that the '071 inventors did not disclose in the '071 that they were aware of how to achieve the subject matter of Claim 1 of the '848 at the time the '071 was filed.

    Witnesses for NetKey have pointed particularly toward the paragraph found at Column 4, line 65, through Column 5, line 14, as showing invention of Claim 1 as of the filing of the '071. There are several reasons why the subject matter of Claim 1 cannot be said to be disclosed in the cited paragraph, or anywhere else in the '071.



First of all, the '071 discloses the use of two software applications, one for browsing, and the other for masking undesired browser controls. Nowhere does the '071 mention the use of dual software executables where one is for browsing, and the other is for "framing" the browser and providing selected authorized controls for that browser. In particular, no such approach -- framing with added controls -- is mentioned as an object of the invention, in the list of objects provided in the Summary of Invention section of the '071. Framing with added controls is a significant step forward from masking, since masking works well to provide security, but the security depends on the "mechanical" positioning of the masking program which tends to be unreliable. Framing is therefore significantly more reliable. Therefore, it would be expected that if the inventors were setting out to accomplish such a major objective, they would certainly say so. Framing was *only* made possible after the introduction of the "black box" browser control object. This object, which would have been referred by anyone skilled in the art as an "OCX control" or "ActiveX control", was not mentioned in the '071. If they meant it as such, they would have said so using the terminology widely acceptable to describe such an invention. It is worth noting in this regard, that the very first object listed for the '848 invention explicitly states that very object -- to provide an image having just such added controls for the browser software. Further, specific disclosure is made in the '848 of this framing image having browser controls at Column 3, lines 57-63, and is further elaborated upon in Column 4, lines 1-43. No such disclosure is to be found anywhere in the '071, which is an additional indication that such subject matter was unknown to the inventors when the '071 was filed. Based on the foregoing, the '071 Patent does not disclose Claim 1 of the '848, specifically the use of dual software executables where one of the executables performs a framing function, as distinct from a masking function, and further provides browser controls, as in Claim 1 of the '848.

The '071 does describe one alternative to the masking approach. At Column 5, lines 7-14, the '071 states that:

> ...the same result may be achieved by coding a browser together with the GUI desired for use in a kiosk as a single executable program.

However, this is not the invention claimed in the '848, which requires dual software executables. The phrase, "coding a browser," means to write the software code for a browser. Coding the browser "together with the GUI desired for use in a kiosk as a single executable program" means writing code for a browser with a custom GUI suitable for kiosk use, all in a single executable program. If the inventors had intended a dual executable approach, they would have said so, as they did in describing the use of security control software in conjunction with GUI control software at Column 6, lines 20-22. The use of a single executable program is not a minor variation from the use of dual executables, one executable for the browser function and one to provide the GUI. First of all, the single executable approach was already known in the kiosk field. Mosaic and its successors Netscape and Internet Explorer all had kiosk modes, sometimes



also known as Presentation mode. It also was being done commercially as MicroTouch Prospector. This approach suffered from one major drawback. In 1995 and 1996, Internet protocols and document presentation standards such as HTML were evolving rapidly, often changing every few months. Coding a browser for Internet use would require re-writing the browser each time the Internet protocols and standards changed. This was a major task, which rendered the single executable approach infeasible for all but the very largest of companies. One alternative was to use an off-the-shelf browser such as Netscape Navigator or Mosaic, together with masking software as dual executables, and this is what the '071 did. In this way, any re-writing of the browser software would be handled by the third-party vendor of the browser, while the masking software would require no change, since the location of the browser controls would not change in any significant way when the browser was re-written.

It was not until Microsoft offered its Active X browser control that the dual executable approach of the '848 became feasible in the marketplace. The Active X browser control provided a browser object without a GUI having its own controls or buttons, and was intended for use with a GUI designed by the user, with buttons and controls specifically designed to suit the user's needs. Significantly, no mention is ever made of Active X browser controls or similar software encapsulation methods in the '071. On the contrary, other than the brief discussion of coding a browser in connection with the single executable approach, all discussions of any browser in the '071 generally refer to off-the-shelf browsers such as Netscape Navigator. This is entirely inconsistent with any awareness by the inventors of using Active X - type controls in their invention. Such a significant shift in approach to the use of Active X controls would certainly have been mentioned by the inventors, had they in fact contemplated it when they filed the '071, yet there is no such mention in the '071. In the '848 on the other hand, an entire paragraph was added discussing just such use of Active X and similar approaches (Column 3, lines 64-67). In addition, no mention is made of such an approach as an object of the '071 invention, while just such an object has been added to the '848 (Column 2, lines 25-28). All of these facts together are convincing evidence that the '848 invention had not been made when the '071 was filed.

Claim 1 of the '848 is also obvious from Active X browser controls in combination with other prior art such as the Columbia Project or KIOSK IN A BOX. As discussed earlier, the Columbia Project showed every element of the '071 masking invention, and pre-dated the '071 filing by over a year. KIAB also included every element of the '071 masking invention, and pre-dates any known date of invention of that approach. Active X controls, as also discussed above, immediately solved the problem of re-writing code for a browser each time the Internet protocols changed. Given the Columbia Project or KIAB, it would have been instantly obvious to any person of ordinary skill in this field, upon having Active X browser controls available, to use the Active X control in tandem with GUI control software as dual executables in the same fashion as was done in Claim 1 of the '848. This is, in fact, the exact way that Microsoft intended its Active X controls to be used -- as software modules to make custom software easy to produce.

