Finally, Claim 1 contains four paragraphs, each describing an element of the invention. The first and second paragraphs describe a monitor and a microprocessor, respectively. The third and fourth paragraphs could be read to describe browser software and GUI control software, respectively. However those paragraphs are very broadly written, and describe many other types of software. For example, the third paragraph is broad enough to describe any typical word processing software, many of them dating back well into the 1980's. The fourth paragraph is also broad enough to describe, for example, Mosaic browser software running in kiosk mode. Mosaic goes back to 1994, approximately two years before the filing of the '071. Thus a broad reading of Claim 1 covers a computer having a monitor and a microprocessor, word processing software and Mosaic, all of which pre-date the '071 filing date by well over a year. Therefore, Claim 1 is obvious -- or even shown exactly -- when viewed in light of the aforementioned prior art.

2. The self-service computer of claim 1, wherein said accessing and displaying software is an Active X control. (Active X Claim withdrawn by NetKey)

.3. The self-service computer of claim 1, wherein said monitor is a touch screen and wherein said image includes buttons selectable via said screen for initiating accessing and displaying software functions.

*See Claim 2, 071 Patent. Touchscreens were not new and had been used in kiosks for many years – they emulate a mouse and don't add any new functionality.*

4. The self-service computer of claim 1, further comprising GUI control software executable on said microprocessor to generate said image.

*See Claim, 6 071 Patent.*

5. The self-service computer of claim 1, further comprising file transfer protocol (FTP) server software executable on said microprocessor for remotely updating said GUI control software and/or said accessing and displaying software.

*See Claim 7, 071 Patent.*



6. The self-service computer of claim 5, further comprising a first daemon running on said microprocessor which shuts down said GUI control software and/or said accessing and displaying software when a SUSPEND file is copied to a specified directory on the self-service computer.

*See Claim 8, 071 Patent.*

7. The self-service computer of claim 5, further comprising a second daemon running on said microprocessor which starts said GUI control software and/or said accessing and displaying software when a RESTART file is copied to a specified directory on the self-service computer.

*See Claim 9, 071 Patent.*

8. The self-service computer of claim 1, further comprising an attract loop which appears on said monitor when there has been no user input for a predetermined period of time.

*See Claim 13, 071 Patent.*

9. The self-service computer of claim 1, wherein said accessing and displaying software is Netscape source code.

*As Netscape is a direct successor to Mosaic then this is an obvious extension to the use of kiosks with Mosaic as described by Rakov. See:*
*http://archive.ncsa.uiuc.edu/General/CommGroup/MosaicHistory/timeline.html*

*10. A self-service computer, comprising:*
*a monitor;*

*a microprocessor coupled to said monitor for controlling what is displayed on said monitor;*

*software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of documents in the viewing window*



*in response to user input, said software capable of performing a plurality of functions with respect to the plurality of documents;*

*software executable on said microprocessor for displaying at least one image on said screen so as to provide navigational controls for at least one authorized function of said accessing and displaying software with respect to the plurality of documents, but without also permitting tampering with said accessing and displaying software by not displaying images providing controls for unauthorized functions with respect to the plurality of documents; and*

*a microphone.*

*This is the same as Claim 1 of the 848 patent with a microphone.  Adding a microphone is obvious, and it is in the Los Alamos Paper paragraph 5.15 (* *http://www.visi.com/~keefner/pdfs/kiosk_paper.html* *).*

11. The self-service computer of claim 10, including a speaker.

*Obvious.  Use of speaker is not new: Los Alamos Paper paragraph 5.2.3*

12. The self-service computer of claim 11, including a camera.

*Obvious.  Use of a camera: Los Alamos Paper paragraph 5.1.6*
~~13. The self-service computer of claim 10, wherein said accessing and displaying software is an Active X control.~~ (Active X Claim withdrawn by NetKey)

14. The self-service computer of claim 10, wherein said monitor is a touch screen and wherein said image includes buttons selectable via said screen for initiating accessing and displaying software functions.

*Obvious.  See Claim 3, 848.*

said image includes buttons selectable via said screen for initiating accessing and displaying software functions.

Obvious. See Claim 3, '848.

20. The self-service computer of claim 16, wherein said accessing and displaying software is Netscape source code.

*Obvious. See Claim 9, '848.*

## Prior Art Disclosed to Patent Office

'071 Patent

Alex Richardson founded NetKey (then Lexitech) in his second year at the Yale School of Management in 1983. According to the Digital Multimedia Association, "Lexitech is the foremost kiosk developer in the nation." The company won five *New Media* Magazine awards, and MultiMedia Producer Magazine selected Lexitech for its Top 100 Award in 1996, 1998 and 1999. It is therefore obvious that the patentees had a great deal of knowledge and contacts within the kiosk industry. They are named as a supplier for instance in The Los Alamos paper of 1995. As suppliers of computer kiosk since 1983 they used many of the system function disabling, remote updating, and security methods claimed in their own products prior to July 1995.

In June, 1996, an article was published in *New Media* magazine, discussing the features of both KIAB and Net Key's (then Lexitech's) product. This article clearly showed the invention of KIAB prior to the filing of the '071. As discussed above, KIAB was highly significant to the patentability of the masking Claims of the '071. No other prior art of comparable significance was considered by the Examiner in the prosecution of the '071. As recipients of awards from the magazine and as leading exponents of *New Media*, it is difficult to believe that the company was unaware of this issue of the magazine, and the article touting their own product.

In February 1996 Microtouch released Microtouch Prospector, which was widely publicized as a Kiosk browser. This used the single executable approach described above, with limited navigation buttons and system functions disabled. It also included URL limiting. As this is described as an alternative method to perform the methods of the 071 patent it is relevant to questions of obviousness. No other prior art reviewed by the Patent Office discloses all this information. Given the close relationship between Microtouch and Lexitech, the closeness of the



industry it is again hard to understand how this commercially released product could be unknown to the inventors at the time of filing.

The '071 describes using Netscape Navigator as the browser, and version 2.01 is specifically mentioned Col 2 line 11. This browser had a kiosk mode built into it, the use of which was described in the associated help file. This kiosk mode disables system functions, as recited in claim 11 and related claims. Its existence was not disclosed, nor was any comparable art reviewed by the Examiner.

Further, one of the inventors of the '071, Jason Bernstein, participated in a thread of questions and answers in a newsgroup (www.comp.infosystems.kiosks) in April, 1996, in which both he and Dave Heyliger answered questions regarding browser security software. That thread clearly indicates that Mr. Bernstein had knowledge of KIAB at that time, which was well prior to the filing of the '071. The thread is available at
http://groups.google.com/groups?hl=en&threadm=4lfq11%24euk%40nnrp1.news.primenet.com&rnum=2&prev=/groups%3Fq%3Djason%2Bbernstein%26hl%3Den%26sa%3DN%26tab%3Dwg

W3 conferences

We have seen how the inventors had a good grounding in the kiosk industry. It seems that their knowledge of the World Wide Web was less. But the briefest of research would have shown that Internet specialists were also interested in kiosks and had built and publicized kiosks that predate the '071 filing.

The World Wide Web (W3) Conferences are the central discussion forum for the development of the Web. Set up by Tim Berners-Lee, known as the inventor of the Web, they have played a pivotal role in its development. The years 1994 to 1996 were crucial in growing a small academic experiment into the force we recognize today. In those early years everyone connected with the development of the Web was avidly interested in the W3 conferences. They have been described as "The SuperBowl" of web conferences and they are where all significant new ideas were discussed and disclosed; any research on the development of the Web must include them. The fact they held workshops on Web-enabled kiosks show how widespread the ideas claimed were before the date of the invention of the '071.

It is no surprise that given the academic, information sharing and delivery background to the Web that kiosks formed an integral part of the ideas of these early pioneers. Another core belief of these pioneers is the free sharing of information, which is why to reveal their ideas we need to look at the public papers rather than patents or commercial realisations.

The first three conferences were:

First International Conference on the World-Wide Web
May 25-26-27 1994, CERN, Geneva Switzerland

WWW Fall '94:  Mosaic and the Web
Chicago, October 17-19 1994

WWW Spring '95
Darmstadt, Germany, April 10-14 1995

Other papers were being published about these inventions well before the date of the '071 filing.
One of the most notable was a review by Los Alamos National Laboratory on January 10, 1995
http://www.kiosks.org/kiosk_paper.html which we have referred to several times.

The omissions of disclosure of this Prior Art goes beyond the careless, there is a pattern of non
disclosure and it would appear to be deliberate. If this Prior Art had been disclosed the claims
very well might not have been allowed.

'848 Patent

    There was no disclosure of the sales of NetKey 2.0 or 2.01, or the sales by NetShift of its
version 1.4, both of which pre-dated the filing of the '848 by more than a year.  The great
significance of these products as prior art discussed above.

    The *New Media* article mentioned above, as well as other prior art associated with Dave
Heyliger and KIAB were disclosed to the Patent Office in March, 1999.  However, no disclosure
was made of the fact that KIAB was in use and on sale prior to the filing of the '071. NetKey
was made aware of the fact that the use and sale of KIAB pre-dated the '071 filing in a letter
from counsel for Dave Heyliger in January, 1999.  As discussed above, KIAB, when viewed
with Active X browser controls, made the invention of each Claim of the '848 obvious.  No
comparable art was ever reviewed by the Patent Examiner.

    There was no disclosure made of the lawsuits against Dave Heyliger in Colorado, or the
suit versus GenesisIntermedia.com in California in which issues involving inequitable conduct
were raised, particularly involving the failure to disclose the *New Media* article and the existence
of KIAB.  Full disclosure of the subject matter of these lawsuits would inevitably led the
Examiner to the *New Media* article and KIAB.





DATE: February 15, 2002.

Respectfully submitted,



Michael G. Cooksey, Esq.
(ct21024)
COOKSEY & COOKSEY, P.A..
5503 S. University Blvd.
Greenwood Village, CO 80121-1702
(303) 781-6555 – telephone
(303) 781-6007 – facsimile
ATTORNEYS FOR DEFENDANTS NETSHIFT
SOFTWARE, LTD., AUTOMOBILE CLUB OF
HARTFORD, and MONTEGONET, LLC

Case 3:00-cv-01364-AVC    Document 125-8    Filed 11/24/2003    Page 8 of 8

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2002, a true copy of the foregoing **DEFENDANTS' ENDORSEMENT OF EXPERTS** is being served, via United States First Class Mail, on the following addressees:

Gene S. Winter, Esq.         (also by facsimile on February 15, 2002)
ST.ONGE, STEWARD, JOHNSTON & REENS
986 Bedford Street
Stamford, CT  06905-5619

Matt Becker, Esq.
Catherine O'Connor, Esq.
DAY, BERRY & HOWARD, LLP
CityPlace 1
Hartford, CT  06103-3499



25

- 25 -