Defendant says: "See discussion under Claim 2." Under claim 2 above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 18 of '071.

### Claim 20 of the '071 Patent

**The method of claim 17, further comprising the step of limiting documents accessible to said browser software by limiting uniform resource locators (URLs) accessible to said browser software.**

Defendant says: "See discussion of Claim 10." Under claim 10 above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 20 of '071.

### Claim 21 of the '071 Patent

**The method of claim 17, further comprising the step of updating said browser software remotely.**

Defendant says: "See discussion of Claim 7." Under claim 7 above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 21 of '071.

### Claim 22 of the '071 Patent

**A method for providing a self-service kiosk system, comprising the steps of:**
- **providing a monitor with a display screen;**
- **providing browser software for accessing and displaying documents in response to user input; and**
- **disabling system functions available to a user of the kiosk system to resist tampering with the kiosk system during operation of the kiosk system.**

Defendant says: "See discussion of Claim 11." Under claim 11 above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 22 of '071.

### Claim 1 of the '848 Patent

Defendants acknowledge that their product reads on claim 1 of the '848 patent. For reference, this claim is cited below:

"A self-service computer, comprising:
- a monitor;
- a microprocessor coupled to said monitor for controlling what is displayed on said monitor;
- software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of functions with respect to the plurality of documents; and
- software executable on said microprocessor for displaying at least one image on said screen so as to provide navigational controls for at least one authorized function of said accessing and displaying software with respect to the plurality of documents, but without also permitting tampering with said accessing and displaying software by not displaying images providing controls for unauthorized functions with respect to the plurality of documents."

I now cite the portion of '071 that claim 1 of '848 extends:
"It is understood that the same result may be achieved by coding a browser together with the GUI desired for use in a kiosk as a single executable program. "

Claim one of '848 simply expands on this concept and thus is an extension of '071.

In defendant's expert report it says, "...the invention claimed in the '848, which requires dual software executables." Defendants use this limitation to argue that claim 1 of '848 is not an extension of '071 and thus is subject to the filing date of '848. In my opinion, there is nothing in claim 1 of the '848 patent that requires separate executables.

Further, defendant fails to give a definition of "dual software executables" in defendant's expert report. The "executables" in modern operating systems are commonly called "processes". It is well known in the art that processes can, and frequently do, create clones of themselves via a "fork" command. This is dual

14

executables emanating from the same software source code. Furthermore, it is common practice for forked processes to mutate themselves to perform a completely different function than the forking process. This is dual executables performing different functions emanating from the same software source code.

Conversely, it is well known in software programming that two separate source programs can be combined into a single source program with equivalent functionality. This is commonly done on large project where separate groups prototype parts of large systems, and after the prototypes are finished they are combined into a single program.

My conclusion is that defendant's expert witness quote "...the invention claimed in the '848, which requires dual software executables." is not supported by the wording of patents '071 and '848, and further it has no merit in the art as demonstrated by the above discussion.

Thus defendant has not established prior art for Claim 1 of '848.

### Claim 3 of the '848 Patent

**The self-service computer of claim 1, wherein said monitor is a touch screen and wherein said image includes buttons selectable via said screen for initiating accessing and displaying software functions.**

Defendant says: "See Claim 2, 071 Patent." Under claim 2, '071 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 3 of '848.

### Claim 4 of the '848 Patent

**The self-service computer of claim 1, further comprising GUI control software executable on said microprocessor to generate said image.**

Defendant says: "See Claim 6, 071 Patent." Under claim 6, '071 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 4 of '848.

### Claim 5 of the '848 Patent

**The self-service computer of claim 1, further comprising file transfer protocol (FTP) server software executable on said microprocessor for remotely updating said GUI control software and/or said accessing and displaying software.**

Defendant says: "See Claim 7, 071 Patent." Under claim 7, '071 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 5 of '848.

### Claim 8 of the '848 Patent

**The self-service computer of claim 1, further comprising an attract loop which appears on said monitor when there has been no user input for a predetermined period of time.**

Defendant says: "See Claim 13, 071 Patent." Under claim 13, '071 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 8 of '848.

### Claim 10 of the '848 Patent

**A self-service computer, comprising:**
- **a monitor;**
- **a microprocessor coupled to said monitor for controlling what is displayed on said monitor;**
- **software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of documents in the viewing window in response to user input, said software capable of performing a plurality of functions with respect to the plurality of documents; and**
- **a microphone.**

Defendant says: "This is the same as Claim 1 of the 848 patent with a microphone. Adding a microphone is obvious, and it is in the Los Alamos Paper paragraph 5.5.5".

16

The so called Los Alamos Paper is more of a kiosk specification than a report on building a kiosk. While a microphone is mentioned as a form of input, there is no report on integrating the use of a microphone in the context of viewing a plurality of documents.

Thus defendant has not established prior art and has not established obviousness for Claim 10 of '848.

### Claim 11 of the '848 Patent

**The self-service computer of claim 10, including a speaker.**

Defendant says: "Obvious. Use of speaker is not new: Los Alamos Paper paragraph 5.2.3".

The so called Los Alamos Paper is more of a kiosk specification than a report on building a kiosk. While a speaker is mentioned as a form of output, there is no report on integrating the use of a speaker in the context of viewing a plurality of documents.

Thus defendant has not established prior art and has not established obviousness for Claim 11 of '848.

### Claim 12 of the '848 Patent

**The self-service computer of claim 10, including a camera.**

Defendant says: "Obvious. Use of a camera: Los Alamos Paper paragraph 5.2.3".

The so called Los Alamos Paper is more of a kiosk specification than a report on building a kiosk. While a camera is mentioned as a form of input, there is no report on integrating the use of a camera in the context of viewing a plurality of documents.

Thus defendant has not established prior art and has not established obviousness for Claim 12 of '848.

### Claim 14 of the '848 Patent

**The self-service computer of claim 10, wherein said monitor is a touch screen and wherein said image includes buttons selectable via said screen for initiating accessing and displaying software functions.**

Defendant says: "Obvious. See Claim 3, 848 Patent." Under claim 3, '848 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus defendant has not established prior art and has not established obviousness for Claim 14 of '848.

### Claim 16 of the '848 Patent

**A self-service computer, comprising:**
- **a monitor;**
- **a microprocessor coupled to said monitor for controlling what is displayed on said monitor;**
- **software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of documents in the viewing window in response to user input, said software capable of performing a plurality of functions with respect to the plurality of documents;**
- **software executable on said microprocessor for displaying at least one image on said screen so as to provide navigational controls for at least one authorized function of said accessing and displaying software with respect to the plurality of documents, but without also permitting tampering with said accessing and displaying software by not displaying images providing controls for unauthorized functions with respect to the plurality of documents; and**
- **a serial input device.**

Defendant's expert witness says: "This is the same as Claim 1 of the 848 patent with a serial input device. Adding a serial input device is obvious. See the Los Alamos paper paragraph 5.1". Under claim 1, '848 Patent above I have argued that defendant's expert witness analysis is faulty.

The so called Los Alamos Paper is more of a kiosk specification than a report on building a kiosk. While a serial input device is mentioned as a form of input, there is no report on integrating the use of a serial input device in the context of viewing a plurality of documents.

18

Thus defendant has not established prior art and has not established obviousness for Claim 16 of '848.

### Claim 17 of the '848 Patent

**The self-service computer of claim 16, wherein said serial input device is selected from the group comprising:**
   **a card swipe reader, a bar code reader, a smart card reader, a personal identification verifier, and combinations of these.**

Defendant's expert witness says: "Obvious. See: Los Alamos Paper paragraph 8.3.1"

The so called Los Alamos Paper is more of a kiosk specification than a report on building a kiosk. While a serial devices such as a card swipe reader, a bar code reader, a smart card reader, a personal identification verifier are mentioned as a form of input, there is no report on integrating the use of these devices in the context of viewing a plurality of documents.

Thus defendant has not established prior art and has not established obviousness for Claim 17 of '848.

### Claim 19 of the '848 Patent

**The self-service computer of claim 16, wherein said monitor is a touch screen and wherein said image includes buttons selectable via said screen for initiating accessing and displaying software functions.**

Defendant says: "Obvious. See Claim 3, '848." Under claim 3, '848 Patent above I have argued that defendant's expert witness analysis is faulty.

Thus Defendant has not established prior art and has not established obviousness for Claim 19 of '848.

The Defendants' expert has not specified the level of skill in the art of kiosk design in 1994, and thus, the opinion that the claimed subject matter is "obvious" is without basis and foundation. The documents relied upon are not dated, and there is no way to determine when they were posted on the web and/or if they are authentic. Some of the documents listed in the report have not been furnished to me by Defendants, and thus, I intend to update this report on receipt of further documents.

19

The additional material provided by Defendants on September 10, 2002 consists of (1) replicates of previously provided materials, and (2) new materials not referenced in the February 15, 2002 Defendant's Expert Witness Report. In particular, the Plaintiff's request for copies of Defendant's cited references to detailed writing by Paolo Tossilini were not included. Thus, my oplonions have not changed as a result of Defendant's new materials.

9/20/2002
Date

*Frederick G. Sayward*
Frederick G. Sayward

*Frederick G. Sayward*

20