IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NETKEY, INC.<br><br>Plaintiff<br><br>v.<br><br>NETSHIFT SOFTWARE, LTD. and<br>AUTOMOBILE CLUB OF HARTFORD<br>and MONTEGONET LLC,<br><br>Defendants/Counter-Claimants. | )<br>)<br>)<br>)<br>) Civil Action No. 00 CV 1364(AVC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NETKEY'S REPLY TO
DEFENDANTS' MARKMAN BRIEF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................. ii

NETKEY'S REPLY TO DEFENDANTS' MARKMAN BRIEF ............................... 1

I.   Summary ................................................................................................. 1

II.  Defendants' Have Improperly Construed The Claims Of
     The '071 Patent ....................................................................................... 1

III. Defendants Have Improperly Construed The Claims Of
     The '848 Patent ....................................................................................... 8

IV.  Netkey's Submission Of Proposed Jury Instructions Is
     Appropriate ............................................................................................ 11

V.   CONCLUSION ...................................................................................... 12

## TABLE OF AUTHORITIES

*AFG Industries, Inc. v. Cardinal IG Co. Inc.,*
239 F.3d 1239 Fed. Cir. 2001) .................................................................................. 11

*Inverness Medical Switzerland GmbH and Unipath Diagnostics v. Warner-Lambert Company.,*
2002 WL 31428861 (Fed.Cir.2002) ............................................................................ 3

*IPPV Enterprises, LLC v. Echostar Communications Corp.,*
106 F.Supp. 2d 595 (D.Del.2000) ............................................................................. 11

*Johnson Worldwide Assocs.,*
175 F.3d at 989, 50 USPQ2d at 1610 ........................................................................ 1

*Renishaw PLC,*
158 F.3d at 1249, 48 USPQ2d at 1120 ...................................................................... 2

*Toro Co. v. White Consol. Indus., Inc.,*
199 F.3d 1295 (Fed. Cir. 1999) .................................................................................. 1

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NETKEY, INC.<br><br>Plaintiff<br><br>v.<br><br>NETSHIFT SOFTWARE, LTD. and<br>AUTOMOBILE CLUB OF HARTFORD<br>and MONTEGONET LLC,<br><br>Defendants/Counter-Claimants. | )<br>)<br>)<br>)<br>) Civil Action No. 00 CV 1364(AVC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NETKEY'S REPLY TO
## DEFENDANTS' MARKMAN BRIEF

Netkey, Inc. ("Netkey") submits its Reply to "Defendants' Markman Brief."

**I.   Summary**

The plain, ordinary meaning of the claim language should be applied in construing the claims. While Defendants urge that their interpretation of certain claim language be accepted over the plain, ordinary meaning, there is no basis in the claims themselves nor is there support in the specification for such a construction.

**II. Defendants' Have Improperly Construed The Claims Of The '071 Patent**

The first step in claim construction is to give all terms in a patent claim their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999) ("[W]ords in patent claims are given their ordinary meaning in the usage of the field of the invention, unless the text of the patent makes clear that a word was used with a special meaning.");

F.3d at 1249-50, 48 USPQ2d at 1120.

As Netkey has asserted in its Markman Brief, "to mask" has the plain, ordinary meaning of "to prevent from being displayed; to hide or block." One way to mask is to cover something that is visible (hiding), another way is not to reveal something (conceal). Dictionary definitions, of general English usage, as well as in the computing field support the plain, ordinary meaning as such. See Netkey's Markman Brief, p. 9. Unless otherwise compelled, the court will give a claim term the full range of its ordinary meaning. *Johnson Worldwide Assocs.*, 175 F.3d at 989, 50 USPQ2d at 1610; *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 985-88 (Fed. Cir. 1988) (term "plasticizer" given full range of ordinary and accustomed meaning to those of ordinary skill in the arts of polymer chemistry and the plastics industry). Defendants do not dispute that the above definition is the plain, ordinary meaning.

Once this plain ordinary meaning is determined, the next step of claim construction is to examine the specification to confirm that the patentee's use of the disputed term is not inconsistent with the plain, ordinary meaning given to it by the court. *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[I]t is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning.") In looking to the specification, it is confirmed that Netkey uses "mask" consistently with its plain ordinary meaning. That is, software on a computer system is said to mask the displayed output, in whole or in part, of the computer system, if output that should be displayed is prevented from being displayed, by the software hiding or blocking the output. This definition is derived from looking to the claims and the specification, which discuss techniques to achieve

2

masking. Specifically, Netkey discloses two techniques to achieve masking, with specific references to each such technique within the specification:

1) using images sized to overlay certain controls such as the menu bar, the document title area, the status bar, the horizontal scroll bar and the vertical scroll bar (Col. 4, lines 59-64). This includes using a window to overlay the full screen browser window (Col. 5, lines 4-14). In one embodiment, shown in Figure 4, each image is a window overlying the full screen browser window. Col. 4, lines 65-67.

2) coding the browser window "together with the GUI desired for use in a kiosk as a single executable program. This could conveniently be achieved by including browser API calls into the Netkey product. It is further understood that in such a product, <u>overlying windows would not need to be used</u> and there would be no need to modify an existing GUI." (emphasis added) See the '071 patent, col. 5, lines 4-14.

The disclosure explicitly states that masking is achievable by both image overlay, and editing the browser window by coding. In this latter editing technique, the browser software controls are removed, and then an image is displayed on the screen in the position of the removed controls. One skilled in the art would understand the term "mask" to encompass both techniques which are explicitly disclosed in the patents. When a term, such as "to mask" encompasses more than one meaning, the court must determine whether the specification or prosecution history clearly demonstrates that only one of the multiple meanings was intended. *Inverness Medial Switzerland GmbH and Unipath Diagnostics, Inc. v. Warner Lambert Company*, 2002 WL 31428861 (Fed. Cir. 2002). There is no such indication that only one meaning was intended, and rather, an explicit statement that masking is not only achieved by image overlay (covering) but also by coding (preventing display of controls).

3

There is no reason to exclude one of these alternatives from the term "to mask" when construing claim 1, despite Defendants' desire to do so. Further, if Netkey meant to limit its claim to the image overlay technique, (limiting masking to its covering aspect and excluding its preventing from being displayed aspect), it would have simply used the term "overlay" instead of using (and defining) the term "mask." Netkey has defined masking in its disclosure to include both these techniques and specifically chose the term "masking" to encompass the techniques disclosed in the specification.

Defendants' in their Markman Brief have failed to follow this first step in identifying the plain, ordinary meaning of "to mask." Instead, they assert the following definition:

> In plain, ordinary English terms, one thinks of a "mask" as something like a costume mask, including a first thing covering and one thing being covered. That is, in common usage there are always two things involved in masking, one thing covering and one thing being covered. Yet Netkey seeks to expand the definition of "mask" to include a first thing without a second thing.

Page 14, Defendants' Markman Brief. Defendants' reasoning is flawed. First, Defendant is addressing mask as a noun where in the claims it is used as a verb. The claim term "so as to mask" calls for techniques that would effectuate masking, in its plain ordinary meaning, such techniques disclosed in the specification, and not for use of a mask, per se, that is a something used to cover another thing. Second, when the verb "to mask" is used, there are not necessarily "two things involved." For instance, when someone masks his anger, he prevents it from being revealed in the first place, and he does so by appearing calm and preventing an angered expression from appearing on his face, <u>not</u> by placing a something over and covering his (angered) facial expression so no one can see it. To use Defendants' terminology, there is just one "thing," the facial expression which is masked without requiring a second "thing" to

4

cover it.

Defendants have narrowed their definition of "mask" in order to suit their need to attempt to avoid infringement of the claims. Their definition is self-serving and their efforts are transparent. They do not complete the first step of claim construction, addressing the plain, ordinary meaning. Instead, Defendants immediately assert their desired definition and isolate portions of the specification that discuss the one technique "to mask." Defendants proposed claim construction follows:

> At least one image positioned for display on said screen so as to **overlay** the controls for said browser software, said image thus rendering the controls inaccessible to a user of the self-service computer to resist tampering with said browser software.

Defendants' Markman Brief, Page 15. Defendants simply have replaced the verb "mask" with "overlay," which is narrower in its meaning. This interpretation is unwarranted as it limits the plain, ordinary meaning of "mask" as supported by the specification, which is the appropriate standard in claim construction.

Defendants do not address support for the plain, ordinary meaning of "to mask," to cover something that is visible (hide) or to not to reveal something and prevent its display (conceal). Rather, they falsely state: "the *only* way disclosed in the '071 to position an image on the screen to mask browser controls is by sizing the image so that it overlays non-optional portions of the browser GUI." Defendants' Markman Brief p. 8. This is a false. As Netkey has shown, the '071 patent discloses two ways to position an image on the screen to mask browser controls: 1) by overlaying (positioning an image so as to overlay/cover the controls); and 2) by coding so as to prevent browser controls from being displayed or revealed in the first place and then positioning an image on the

5

screen for display.) Both these techniques include positioning an image and effectuate masking. However, both do not require overlay. In essence, the Defendants are attempting to limit the construction of the term "position." Specifically, by stating "the *only* way disclosed in the '071 to position an image on the screen to mask browser controls is by sizing the image so that it overlays non-optional portions of the browser GUI," *id.*, Defendants attempt to construe the claim language of "position an image on the screen" incorrectly as "position an image **over browser controls** on the screen." Position does not mean *position over* or *placing on top.* Defendants are improperly trying to import an overlay limitation into the claims any way that they can. As the specification explicitly discloses both techniques, overlay and coding, which fully supports the plain ordinary meaning of "to mask," Defendants' have resorted to attempts to import limitations elsewhere in paragraph 4 of claim 1, without acknowledging so.

In their Markman Brief, Defendants later capitulate and admit that the passage at column 5, lines 4-14 of '071 patent "is the sole disclosure in the entire '071 specification of any alternative to the approach of masking browser controls with an overlaying image." See Defendants' Markman Brief, p. 10. Defendants have characterized this as a "second type of masking technique" but go on to say that it "is inconsistent with the plain language of the specification as to 'masking' with an image." *Id.* at 11. Again, Defendants are limiting "masking with an image" to require overlay, when in fact, the specification additionally includes and describes the coding technique, which would be understood by one of skill in the art to effectuate masking without overlay. ("It is understood that the same result may be achieved by coding a browser together with the GUI…. It is further understood that in such a product, <u>overlying</u> windows would not need

6

to be used." (See the '071 patent, col. 5 lines, 7-13, emphasis added.) It is clear legal error to substitute "overlay" for "mask" where the specification states that an "overlying" technique need not be used.

Defendants proceed to then argue that this passage is "vague," in addition to being "lone" and "short." See Defendant's Markman Brief, p. 12. Regardless of its length, the disclosure supports the claims and is pertinent information in teaching the patent to one of skill in the art. Further, Defendants' assertions of language in the specification being vague are not appropriately addressed in a Markman Brief, and Defendants are attempting to re-argue their failed Motion for Summary Judgment of invalidity. If Defendants wish to attack the validity of the patent, asserting the specification of the '071 patent is vague and fails to support the claims and meet the written description requirement, they will have a full opportunity to do so at trial. That is not an issue which should or can be addressed during claim construction.

Defendants have ignored the rule of applying the plain, ordinary meaning in interpreting claim language, and have instead attempted to contrive a narrow definition of "to mask." Defendants cannot avoid the fact that the specification supports masking encompassing both hiding by image overlay and preventing from being displayed by coding the browser, as is disclosed at column 5, lines 4-14. As such, Claim 1 of the '071 patent should be construed such that "to mask" includes both such techniques as Netkey set-forth in its Markman Brief.

### III.     Defendants Have Improperly Construed The Claims Of The '848 Patent

In its Markman Brief, Netkey construed the terms "software" and "executable," as well as other claim language as having its plain, ordinary meaning and provided computing dictionary definitions which be used by one of skill in the art. Specifically, "software executable" is construed to mean "instructions for the computer, able to be run in their current format." See Netlkey's Markman Brief, p. 13. This is the meaning of the term as used both in paragraph 3 and paragraph 4. Further, it is well known to one skilled in the art in software programming that software can be written as a single executable programs or a multiple executable program with the functionality of the program maintained. See Netkey's Opposition to Motion for Summary Judgment, Sayward Dec., ¶¶35-44. As such, the term "software (executable)" as used in paragraphs 3 and 4 does not require the software to be either: (1) a single set of instructions that performs both the generating function (paragraph 3) and displaying function (paragraph 4), or (2) multiple sets of instructions to accomplish these functions. Therefore, claims are not limited to software including either a single set of instructions or multiple sets of instructions. There is not indication in the specification to alter the plain, ordinary meaning of the term "software executable" as it is understood to one of skill in the art nor is their an indication to exclude one of the alternatives encompassed within the plain, ordinary meaning. As such, the specification supports the construction that "software executable" may be a single set of instructions or multiple sets of instructions.

The specification of the '848 patent, provides a discussion of software being a single executable set of instructions or multiple executable set of instructions:

> The GUI control software is stored in memory 32. A security control software module <u>may be an enhancement to or a separate program from</u> the GUI control software.

8

See the '848 patent, at col. 4, lns. 53-55. Further, the specification of the '071 patent, provides a discussion of software being a single executable set of instructions or multiple executable set of instructions. "Indeed the browser and browser security software (to be discussed hereinbelow) may be combined as a single product." ('071 Patent, col. 3, lines 63-65.) The use of the word "may" must be understood to mean that the browser and browser security software also need not be combined. Further, the '071 patent is discussing browser security software, just as the '848 patent :

> The GUI control software is stored in memory 32. A security control software module <u>may be an enhancement to or a separate program from</u> the GUI control software.

See the '071 patent, col. 6, lines 19-21.

In their Markman Brief, Defendants seemingly do not dispute the plain, ordinary meaning of "software executable" as asserted by Netkey, but rather read a limitation on Claims 1 and 16 of the '848 Patent as requiring separate and distinct executable programs for the third and fourth paragraphs of these claims. Defendants argue, based on an unsupported construction of Claims 1 and 16, that a single executable program is excluded from the scope of Claims 1 and 16, and the term "software executable" appearing in paragraphs 3 and 4 refers to "two separate sets of software." (See Defendant's Markman Brief p. 16)

Defendants are trying to limit its meaning for their own liking and benefit. In order for Defendant's desired construction, the achieve Defendants' goal, the claim would have to have been written differently, including following underlined language added for the claim to be limited to two separately executable programs:

1. A self service computer, comprising:
a monitor;

9

a microprocessor coupled to said monitor for controlling what is displayed on said monitor;

<u>a first</u> software executable on said microprocessor for generating a document viewing window on said monitor, and for accessing and displaying a plurality of documents in the viewing window in response to user input, said software capable of performing a plurality of functions with respect to the plurality of documents; and

<u>a second</u> software executable <u>separately from the first software</u> on said microprocessor for displaying at least one image on said screen so as to provide navigational controls for at least one authorized function of said accessing and displaying software with respect to the plurality of documents, but without also permitting tampering with said accessing and displaying software by not displaying images providing controls for unauthorized functions with respect to the plurality of documents.

>Instead, Defendants offer the following construction:
>
>"Software executable" means a program ready to run in its current format. The software of the third paragraph of Claim 1 is separate from the software of the forth paragraph of Claim 1. The software of each of the two paragraphs is capable of running as a program independently of the software of the other program.

Defendant's Markman Brief, p. 25.   Defendants' construction is unclear and confusing. In the first sentence, Defendants simply define "software executable" with the term "program," stating that "program" is "simpler and equally accurate." Defendants' Markman Brief, p. 19. However, this does nothing to clarify the meaning, and Defendant's continue to construe the claim simultaneously using both the terms together in the third sentence.  In the second sentence, Defendants state the software of paragraphs 3 and 4 are "separate," yet do not clarify in what sense they are separate. Also, they state that the software "<u>is capable of running</u>" rather than "runs" or "must run" as a program independently of the other program.  That leaves one to assume that while the software "<u>is capable of</u> running separately," it typically does not, and certainly is not required to do so.  Such a construction, allowing for software of paragraph 3 and to run together, or separately, is along the lines of Netkey's construction which allows for the software of paragraphs 3 and 4 to be a single or multiple executable software

10

(set of instructions). However, as Defendants' construction is overall unclear and unsupported, Netkey does not agree with the construction.

More appropriately, "software executable" should be construed to mean "instructions for the computer, able to be run in their current format, either as a single set of instructions or multiple sets of instructions."

Defendants argue that "Plaintiff Netkey's suggested construction of the "software executables" of paragraph 3 and 4 as being either a single program or two programs is too broad to be supported by the specification of the '848 patent." Defendants' Markman Brief, p. 20. Again, if Defendants wish to assert the invalidity of the claims of the '848 patent, they will have opportunity to do so at trial. It is inappropriate to raise this issue in the context of a Markman Brief.

## IV.   Netkey's Submission Of Proposed Jury Instructions Is Appropriate

Defendants state that jury instructions are "untimely," (Defendants' Markman Brief, p. 4) yet offer no support in case law for their assertion or other reason showing Netkey's proposed jury instructions to be improper. At the conclusion of the claim construction, the Court's adopted claim construction becomes the basis of the jury instructions in the case. *IPPV Enterprises, LLC v. Echostar Communications Corp.*, 106 F.Supp.2d 595, 601 (D.Del. 2000) "It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial." *AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001).

The proposed Jury Instructions submitted with Netkey's Markman Brief were solely for the convenience of the Court to be inserted at page 25 in the already existing Jury

Instructions as provided in Exhibit C to the Joint Trial Memorandum filed May 2, 2002 (Doc. 69). Jury instructions are the natural result of claim construction as the case follows the path towards trial. Defendants simply do not want this case to move forward to trial and continually attempt to delay progress.

## V.  Conclusion

Defendants' claim construction as set forth in Markman Brief ignores the plain, ordinary meaning, contradicts disclosure in the specification, and should not be adopted. The Court should finalize the jury instructions and hold a trial.

Respectfully submitted,

12/4/03
Date

_____
Gene S. Winter, ct05137
Helen M. Limoncelli, ct24332
St. Onge Steward Johnston & Reens LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: (203) 324-6155

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing NETKEY'S REPLY TO DEFENDANTS' MARKMAN BRIEF is being served this 4th day of December 2003, via first class mail, postage prepaid to:

Matthew J. Becker
Catherine Dugan O'Connor, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Michael G. Cooksey, Esq.
Cooksey & Cooksey, P.A.
1700 Broadway, Suite 1700
Denver, Colorado 80290

Karen A. Moreno
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499

12/4/03
Date

13