IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NETKEY, INC., a Delaware Corporation, | CASE NUMBER: 3:00 CV 1364 (AVC) |
| Plaintiff, | |
| vs. | |
| NETSHIFT SOFTWARE, LTD., AUTOMOBILE CLUB OF HARTFORD, MONTEGONET, LLC, | |
| Defendants/Counter-Claimants. | December 22, 2003 |

**DEFENDANTS' RESPONSE TO THE '848 PORTION OF PLAINTIFF'S REPLY IN SUPPORT OF ITS *MARKMAN* BRIEF**

Defendants, Netshift Software Ltd., Automobile Club of Hartford, and MontegoNet, LLC (hereinafter collectively "Defendants"), by and through their undersigned counsel, hereby submit the following response to the '848 portion of Plaintiff Netkey's *Reply* in support of its *Markman* Brief. Defendants state as follows:

**INTRODUCTION**

For the reasons explained in Defendants' Motion for Leave, this brief was necessitated by Plaintiff Netkey's failure, in its opening *Markman* Brief, to offer any discussion regarding construction of the claims of the '848 Patent. The following is Defendants' response to Plaintiff's arguments on '848 claim construction that appeared, for the first time, in its *Reply* in support of its *Markman* Brief.

Plaintiff begins its '848 claim construction argument by defining "software executable" as "instructions for the computer, able to be run in their current format." Plaintiff's *Reply*, at p.8. This is not the definition put forth by Plaintiff in its proposed jury instructions, which is as follows: "instructions for the computer which are able to be run *as a program* in their current format"

(emphasis added). *See* Plaintiff's *Markman* Brief, at Ex. A, p.5. Support for the latter definition is found in Plaintiff's cited *Computer Desktop Encyclopedia*, which defines the adjective "executable" to mean, "able to be run in its current format;" and which defines the noun form of "executable" to mean, "a program file ready to run in a particular environment." *See* Plaintiff's *Markman* Brief, at Ex. C, p.331.

Plaintiff now seeks to re-define "software executable" without the use of the word, "program," by instead substituting the phrase, "sets of instructions." Plaintiff ends up with a new definition of "software executable" as "instructions for the computer, able to be run in their current format, either as a single set of instructions or multiple sets of instructions." Plaintiff's *Reply*, at p.11; *see also* Plaintiff's *Reply*, at p.8. However, Plaintiff does not offer any definition of a " 'set' of instructions." Fortunately, Plaintiff's own cited *Computer Desktop Encyclopedia* does address the meaning of that phrase, defining "program" as "*a set of instructions* that perform a particular task" (emphasis added). See Plaintiff's *Markman* Brief, at Ex. C, p. 168, under the definition of "computer." Applying the foregoing definition of "program" to Plaintiff's new definition of "software executable," Plaintiff's new definition translates to, "instructions for the computer, able to be run in their current format, either as a single program or as multiple programs." This new construction of "software executable" runs counter to Plaintiff's own jury instruction on the subject, which states that "software executable" is "able to be run as *a program*" (emphasis added). *See* Plaintiff's *Markman* Brief, at Ex. A, p.5.

More importantly, Plaintiff's new construction is contrary to the way "software executable" is used in the '848 specification and Claims (see detailed discussion in Defendants' *Markman* Brief, at pp.20-25). In particular, the '848 specification defines "browser software" as "any program for accessing and displaying documents or files" (*see* '848 Patent, Column 3, lines 64-65). Plaintiff has not disputed that this browser software is the "software executable" found in paragraph 3 of Claim 1 of the '848 (*see* Defendants' *Markman* Brief, at pp.19-20). Under Plaintiff's new construction of "software executable," the software executable of paragraph 3 -- the browser software -- could be either a single program or multiple programs. However, the specification holds out no such

possibility that there might be more than one program in the browser software, instead defining "browser software" as "any program for..." It is thus irrelevant to argue, as Plaintiff does, that software *can* be written as either a single program or as multiple programs (*see* Plaintiff's *Reply*, at p.8). The proper question to be addressed is how the specification uses the words found in the claims, and the specification makes it clear that the browser software is a single program.

Plaintiff quotes the following passage from the '071 Patent as showing that software may be a single executable program or multiple executable programs:

> The GUI control software is stored in memory 32. A security control software module <u>may be an enhancement to or a separate program from</u> the GUI control software (emphasis added by Plaintiff).

(*See* '848 Patent, Column 4, lines 53-55; Plaintiff's *Reply*, at p.8). Once again, the relevant question is not whether *some* software *can* be written as a single program or multiple programs, but rather how the specific software executables of paragraphs 3 and 4 are written and disclosed in the specification, and claimed in the claims. In this regard, it is noteworthy that Plaintiff's example refers only to a possible combination of the GUI control software and the security control software, and not to any combination involving the browser software. This is not just an accident. The commercial viability of the '848 invention in fact requires that a third-party vendor write the browser software, and the claimed invention of the '848 is designed to take advantage of that fact. Plaintiff admitted as much in arguing the patentability of their invention before the Patent Office (*see* Defendants' *Markman* Brief, at pp. 18-19; *see* Overview Of The '848 Patent, in Defendants' *Markman* Brief, at pp. 17-19, for a detailed discussion of the role of third-party browser software in the '848 invention). The '848 Patent itself confirms the third-party nature of the browser software at Column 3, lines 65-67, stating:

> "Browser software may include, but is not limited to Netscape source code and Active X controls."

The fact that the browser software is purchased from outside vendors explains why there are flowcharts for both the GUI software and the security control software in the '848 Patent (Figures 3 and 4), but no such flowchart for the browser software.

Thus, Plaintiff's quoted example from the '071 illustrates only that the GUI software and

3

the security control software *could* be combined, which is of course true since Plaintiff wrote both pieces of software. (But there is no hint that the two *were* combined in paragraph 4, which only recites the GUI software – see description in the '848 specification of the functions of the security control software at Column 4, lines 55-65; none of said functions are found in paragraph 4). However, the GUI control software and the browser software could not be combined in the '848 invention without destroying the commercial viability of the '848 invention; this is precisely why there is not even a hint to be found in the '848 of combining the GUI control software with the browser software.

Plaintiff goes on to offer a passage from the '071 in an effort to support its contention that software may be written as a single program or multiple programs: "Indeed the browser and browser security software (to be discussed hereinbelow) may be combined as a single product." (*See* Plaintiff's *Reply*, at p.9, quoting the '071 Patent, at Column 3, lines 63-65). This passage by itself is vague, and certainly does not rise to the level of specific description required in fully disclosing an invention. An invention must be disclosed with all its limitations, not merely made obvious. "One does that by such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." **Lockwood v. American Airlines, Inc.**, 107 F.3d 1565,1572 (Fed. Cir. 1997). The Patent tells us that the browser security software is "to be discussed hereinbelow.." However, the phrase "security software" never occurs again in the '071, and in fact occurs nowhere else in the Patent. The only mention in the '071 of combining the browser software with any other software occurs at Column 5, lines 7-14, where the Patent states:

> "It is understood that the same result may be achieved by coding a browser together with the GUI desired for use in a kiosk as a single executable program. This could conveniently be achieved by including browser API calls into the NetKey.TM. product. It is further understood that in such a product, overlying windows would not need to be used and there would be no need to modify an existing GUI."

The foregoing single executable program approach is discussed in detail in Defendants' *Markman* Brief, at pp.6-7, and 17-19. As noted in that discussion, the single executable program approach was not commercially feasible, as it required that the browser software be frequently re-written, a

4

prohibitively expensive task. That explains why the single executable program approach merited only the foregoing three sentences in the '071. It also explains why those three sentences from the '071 were conspicuously dropped from the specification of the '848 when it was filed as a continuation-in-part of the '071. It is also telling that nowhere in the '848 is there a single mention of combining browser software with any other software. The only reasonable explanation for these absences is that combining the browser software with other software is not intended to be a part of the claimed invention of the '848. To the contrary, the '848 invention purposely keeps the browser software as a separate program, so as to avoid the aforementioned re-writing problems which occur when the browser software is written as a single program with the GUI and/or the security control software.

A comparison of Claim 1 of the '848 with Claim 16 of the '071 offers additional evidence of how the third and fourth paragraphs of Claim 1 are intended to recite separate browser and GUI programs, respectively. Claim 16 is claiming an invention utilizing the single executable program approach, and clearly illustrates how the '848 Claims would have been written if they were claiming the browser software and the GUI software as a single executable program (*see* detailed discussion of Claim 16 in Defendants' *Markman* Brief, at pp. 24-25). In particular, if a single executable approach were intended, the browser software and the GUI software would be expected to be combined in a single paragraph as they are in Claim 16. Instead, Claim 1 of the '848 separates the browser software and the GUI software into separate paragraphs, which accurately reflects the way the '848 invention works – with the browser software and the GUI software operating as separate programs.

Even applying Plaintiff's new construction of "software executables" as being "instructions for the computer, able to be run in their current format, either as a single set of instructions or multiple sets of instructions" (see Plaintiff's *Reply*, at p.11), paragraphs 3 and 4 of Claim 1 of the '848 are still interpreted to each recite at least one program. Inserting Plaintiff's construction of "software executable" into Paragraph 3, the paragraph becomes "instructions for the computer, able to be run in their current format, either as a single set of instructions or multiple sets of instructions

on said microprocessor for [performing browser functions]." Since Plaintiff's own cited *Computer Desktop Encyclopedia* states that "a set of instructions that perform a particular task" is a "program" (*see* Plaintiff's *Markman* Brief, at Ex. C, p. 168, under the definition of "computer"), paragraph 3 can be seen to recite at the very least a browser program. In like fashion, paragraph 4 of Claim 1 can be seen to recite at least a GUI program. Thus, even using Plaintiff's own definitions of "software executable" and "program," it is clear that Claim 1 of the '848 recites at least two programs for performing the browser and GUI functions. Therefore, the single executable program passage of the '071 cannot possibly be referring to the claimed invention of the '848.

Finally, it is important in the claim construction process to foresee at least one issue which will be presented to the jury, should the case proceed that far. As argued at length in Defendants' *Memorandum Brief in Support of Rule 56(c) Motion for Summary Judgment*, at pp. 29-31, Plaintiff's '848 Patent will be invalidated by prior art unless Plaintiff can claim the benefit of the filing date of the '071 Patent for priority purposes. In order to claim the benefit of the '071 filing date, Plaintiff must show disclosure of the subject matter of the '848 claims in the '071. However, the '071 is almost exclusively directed toward masking of unwanted browser controls using an overlaying image or images, which is not the subject matter of the '848 claims. The only alternative disclosed in the '071 to the masking approach is the single executable program approach found at Column 5, Lines 7-14. Therefore, the question which will necessarily be presented to the jury will be whether the claims of the '848 are disclosed by the single executable program approach of the '071. In order that the jury can make such a determination without getting hopelessly lost in complex terminology, it is important that the claim construction of the '848 give some guidance as to how the "software executables" of paragraphs 3 and 4 of Claim 1 compare to "programs;" i.e., how many programs are recited in those paragraphs. This same issue may also arise in comparing the '848 claims to the prior art and/or to infringing products. If the jury is left to interpret on their own the number of programs inherent in paragraphs 3 and 4, they will in effect be taking over the Court's task of interpreting the claims. This would subvert the entire purpose of *Markman*, which is to have the Court interpret the claims of the Patent, since the Patent is a fully integrated written instrument to be interpreted as a

matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-79 (Fed. Cir. 1995) (en banc).

**WHEREFORE**, Defendants respectfully request this Honorable Court to consider the foregoing in response to the '848 portion of Plaintiff Netkey's *Reply* in support of its *Markman* Brief.

**DATED**: December 22, 2003.

                                                Respectfully submitted,

                                      **COOKSEY & COOKSEY, P.A.**

By: _____
Michael G. Cooksey, Esq.
(Ct 21024)
1700 Broadway, Suite 1700
Denver, Colorado 80290
(303) 860-0101
ATTORNEYS FOR THE DEFENDANTS

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on December 22, 2003, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO THE '848 PORTION OF PLAINTIFF'S REPLY IN SUPPORT OF *MARKMAN* BRIEF** was placed in the U.S. Mail, postage prepaid and addressed to:

Clerk of the U.S. District Court
 District of Connecticut
450 Main Street
Hartford, CT 06103

Gene S. Winter, Esq.
ST. ONGE, STEWARD, JOHNSTON & REENS, LLC
986 Bedford Street
Stamford, Connecticut 06905-5619

Matthew J. Becker, Esq.
DAY, BERRY & HOWARD, LLP
City Place I
Hartford, CT 06103-3499