IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NETKEY, INC.,<br>a Delaware Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>NETSHIFT SOFTWARE, LTD.,<br>AUTOMOBILE CLUB OF HARTFORD,<br>MONTEGONET, LLC,<br><br>    Defendants/Counter-Claimants. | CASE NUMBER: 3:00 CV 1364 (AVC)<br><br><br><br><br><br><br><br><br><br><br>March 5, 2004 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S *MOTION TO EXCLUDE* TIMOTHY DAW AS
AN EXPERT WITNESS, AND MOTION TO STRIKE SAME; AND
CROSS-MOTION TO STRIKE PLAINTIFF'S EXPERT, DR. SAYWARD**

    Defendants, Netshift Software Ltd., Automobile Club of Hartford, and MontegoNet, LLC (hereinafter, collectively, "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's "*Motion to Exclude Timothy Daw as an Expert Witness*". Defendants also cross-move, for an Order striking Plaintiff's expert, Dr. Sayward. Defendants state as follows:

    1.    The dispositive motion deadline in this case, set forth in the Court's Amended Scheduling Order, has passed long ago. That did not stop Plaintiff from filing its instant *Motion to Exclude* Defendants' expert, Timothy Daw. Clearly, the motion, if the Court were to entertain and grant it, would be dispositive in nature, as Defendants would be left with no technical expert heading into trial. Therefore, the motion is grossly untimely and should be denied for that reason, in addition to the others stated below. Defendants hereby respectfully move this Court for an order striking the motion for having been filed well beyond the dispositive motion deadline, in violation of the Court's Amended Scheduling Order.

    2.    This is not the first time Plaintiff has attempted to have Mr. Daw stricken as a witness. The Court will recall that Plaintiff, in its "*Response in Opposition to Defendants' Rule 56*

*Motion for Summary Judgment*" (see, in particular, at pp. 5-8), filed several months ago, made a virtually identically worded on Mr. Daw's credentials and ability to serve as an expert witness. Defendants, in reply to that response, filed their "*Supplemental Reply in Opposition to Plaintiff's Argument (in its Response to Defendants' Motion for Summary Judgment) that Defendants' Expert, Tim Daw, Lacks Requisite Credibility and Qualifications*".  The Court will recall that it denied Defendants' "*Rule 56 Motion for Summary Judgment*" for reasons unrelated to Timothy Daw's qualifications.  Notwithstanding that ruling, Plaintiff never, in timely fashion, requested the Court, thereafter, to re-visit the issue of Mr. Daw and his credibility and qualifications.  This twenty-third hour request is simply too late, as it is being made after two trial settings (and continuances), and just three (3) months away from the third.

3.     In any event, Plaintiff, in its response in opposition to Defendants' "*Motion for Summary Judgment*", previously attacked the character, credibility and qualifications of Mr. Daw. Plaintiff now attempts a verbatim re-hash of that same argument.  Again, Plaintiff requests the Court to disregard Mr. Daw as an expert, the argument being that he is impermissibly biased and lacks the requisite qualifications set forth in Rule 702, Fed. R. Ev.

4.     Seen for what it is, Plaintiff's attack on Mr. Daw is nothing more than a dispositive motion, disguised as a motion to strike a witness.  As the following discussion will demonstrate, it is ironic that Plaintiff would even dare challenge the qualifications and alleged bias of Mr. Daw.

## ALLEGED BIAS

5.     Assuming, for the sake of argument only, that Mr. Daw's alleged bias is the true measure of whether or not he should be permitted to testify as an expert (which it is not), then the Court would most certainly be required to strike, and/or disregard Plaintiff's technical expert, Dr. Frederick Sayward.  This witness was deposed by Defendants' undersigned counsel on November 19, 2002 (excerpts from that deposition are attached hereto as Exhibit "A"). The deposition revealed that this individual was (and is) a long-time (i.e. 22 years) personal and social friend of Gene S. Winter, Plaintiff's lead counsel (Ex. A, Deposition of Dr. Sayward, p. 15, ll. 7-17), a fact which Mr. Winter failed to disclose to the Defendants, and which they learned about, virtually by accident, only during their deposition questioning of Dr. Sayward.  Therefore, Defendants were not entirely

2

surprised to learn in the deposition that Mr. Winter significantly edited, if not outright authored, this individual's "expert" reports in this case. (Ex. A, Deposition of Dr. Sayward, p.22, l.2 through p. 23, l.21). The reports were typed by Mr. Winter and/or someone in his office, and the signature page was then faxed to Dr. Sayward for his signature (Ex.A, Deposition of Dr. Sayward, p. 22, ll.22-24). In the deposition, this witness, when pressed to produce his drafts reports, i.e., before Mr. Winter got ahold of them, stated that he did not have them with him, but indicated that he would turn them over to Mr. Winter so that Mr. Winter could, in turn, produce them to Defendants' undersigned counsel (Ex. A, Deposition of Dr. Sayward, p.23, ll.15-21). Of course, this never occurred, despite undersigned counsel's post-deposition request of Mr. Winter to turn the drafts over, the explanation given that the drafts somehow had disappeared. Did drafts authored by Dr. Sayaward ever exist? Only Plaintiff's counsel, Mr. Winter, and Dr. Sayward know the answer to this question. Defendants hereby move the Court for an Order striking Dr. Sayward. As the Court will learn at trial, Dr. Sayward had infringement opinions attributed to him by Mr. Winter even before he (Sayward) had been retained and even before he had begun his work in this case. How could his testimony ever be viewed as objective and trustworthy?

6. Mr. Daw, who admittedly is employed by Defendant NetShift and who has never acted as a retained expert witness in a litigation setting, can hardly be disqualified as an expert for any alleged bias he may have in favor of his employer (see case law, *infra*). This issue was a monotonously repeated topic of discussion in his deposition by Mr. Winter. Mr. Winter's questioning, and Mr. Daw's responses, are, for reason(s) at which Defendants can only guess, omitted from Plaintiff's briefing. In fact, Plaintiff's counsel, Mr. Winter, specifically queried Mr. Daw as follows (quoted from pages 153-54 of the Daw deposition, Ex. "B" hereto):

```
11   Q.   Aren't you a very much biased expert
12        witness in this case, biased in favor of NetShift?
              ......
16   A.   No.
              154
10   Q.   Do the factors I mentioned affect your
11        bias in this case of the last question?
12   A.   My bias is to make sure that my reading
13        is correct, not to particularly put the case for
14        NetShift.
15        I have great faith that a judge and
```

3

|   |   |
|---|---|
| 16 | jury will find the correct answer in this case.  And |
| 17 | ***the biggest disservice I could give to NetShift would*** |
| 18 | ***be to give a biased report that encouraged NetShift*** |
| 19 | ***to continue in this litigation if there was no basis*** |
| 20 | ***in fact.*** |
| 21 | ***Therefore it is in NetShift's interest*** |
| 22 | ***for me to be unbiased*** (emphasis added). |

## RULE 702 QUALIFICATIONS

7.      Plaintiff has also raised the issue of Mr. Daw's alleged lack of qualifications.  Truth be told, if the requirements of Rule 702, Fed. R. Ev., were strictly applied to Plaintiff's expert, Dr. Sayward, Plaintiff would be in enormous trouble.  For example, when queried on the issue in his deposition, this "expert" amazingly was not even able to articulate the concept of a "person of ordinary skill in the art" (Ex. A, Deposition of Dr. Sayward, p.20, ll.23-25).  Of course, for infringement purposes, the patents in suit must be construed by a hypothetical person of ordinary skill in the art of kiosk browser systems, a definition which this individual was unable to make and which he had no meaningful grasp of (Ex. A., Deposition of Dr. Sayward, p.21, ll. 2-17).  More problematic for this witness, he had no background of any kind in kiosk software design (Ex. A, Deposition of Dr. Sayward, p.15, ll.4-6), nor in development of kiosk systems, which is the subject matter of the patents in suit (Ex. A, Deposition of Dr. Sayward, p. 50).  He had not even seen a kiosk before this lawsuit!  A reading of Dr. Sayward's deposition (Ex. A), at p.50, ll. 4-25, illustrates this witness' utter lack of essential background in the field of the patents in suit.

8.      Unlike Dr. Sayward, who was unable to do so, Mr. Daw in his deposition had no difficulty providing a definition of the hypothetical "person of ordinary skill in the art".  See Ex. B, Deposition of Mr. Daw, pp. 127-28, and pp. 199-204.  Mr. Daw stated that in the field of the patents in suit, this hypothetical person would "... work in the field of creating kiosks, would know all the prior art in the filed, would know about kiosks, ... he has handled them, he has seen them, and he is familiar with the problems of the art itself.  ...  He is not a genius... but not an idiot. [T]his isn't rocket science, and it is a standard computer, it is a standard monitor, it's a standard browser...  It's a very simple set of problems in the art.  The solution is not hard. ...  [The hypothetical person has] around two months of experience in kiosk systems, and ... a working knowledge of general I.T. –

4

information technology." (Ex. B, Deposition of Mr. Daw, p.201-204). Mr. Daw, who has bachelors and masters degrees from Oxford University in England, and extensive experience in computer science, completely dispelled the notion that the hypothetical person of ordinary skill in the field of the patents in suit must have what Plaintiff says he must have: a formal, structured course of study in computer science, with experience.

9. On a troubling note, Plaintiff disingenuously insinuates that Mr. Andy Pinkard (Mr. Daw's co-employee), not Mr. Daw, wrote the defense expert report. This is a verbatim re-hash of the verbatim argument set forth at p.8 of its *Brief in Opposition to Defendants' Motion for Summary Judgment*, where Plaintiff also falsely represented that Mr. Pinkard was barred from serving as an expert by order of this Court after Plaintiff's motion (an argument which Plaintiff mysteriously omits from its latest motion attacking Mr. Daw). Both of these statements were (and are) deliberate misrepresentations of the truth. In fact, Mr. Daw testified that he co-authored the report with Mr. Pinkard, and that both of them stood behind the wording of the report (Ex. B, Deposition of Mr. Daw, pp.43-50). As for Mr. Pinkard, Defendants voluntarily agreed not to call him as an expert witness at trial because of Plaintiff's complaint that his expertise and expected testimony would merely be duplicative of Mr. Daw's. Plaintiff and Defendants agreed that Mr. Daw, not Mr. Pinkard, would act as Defendants' technical expert. The Court approved Plaintiff's stipulated motion to have Mr. Pinkard withdrawn as an expert on Plaintiff's behalf. Mr. Pinkard was never barred from serving as an expert – he was voluntarily withdrawn by Defendants themselves. Plaintiff should be admonished from offering such falsehoods in its pleadings

10. Finally, if the Court desires, Defendants would be more than willing to file complete copies of the transcripts of Mr. Daw's two depositions given in this case, and/or to have him present to testify in any hearing the Court decides to conduct in connection with Defendants' *Motion to Exclude*. The Court will see that Mr. Daw is eminently qualified to serve as an expert witness in this case and that, in fact, he is one of the world's leading experts in kiosk design and technology, which is the subject matter of the patents, not computer source code. Defendants submit that Plaintiff's attack on Mr. Daw's qualifications and credentials was manufactured for no other reason than to deal with, as a last ditch effort, the devastating blow it suffered as a result of the Court's *Markman*

5

claim construction ruling.

WHEREFORE, for the foregoing reasons, Defendants respectfully move this Honorable Court to enter an order striking and/or denying Plaintiff's "*Motion to Exclude Timothy Daw as an Expert Witness*".  Defendants also cross-move this Honorable Court for an Order striking Plaintiff's expert, Dr. Sayward, as an expert witness.

**DATED** March 5, 2004.

                Respectfully submitted,

                **COOKSEY & COOKSEY, P.A.**

By    (Originally Duly Executed)
       Michael G. Cooksey, Esq.
       (Ct 21024)
       1700 Broadway, Suite 1700
       Denver, Colorado 80290
       (303) 860-0101
       ATTORNEYS FOR THE DEFENDANTS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 5, 2004, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S *MOTION TO EXCLUDE* TIMOTHY DAW AS AN EXPERT WITNESS, AND MOTION TO STRIKE SAME; AND CROSS-MOTION TO STRIKE PLAINTIFF'S EXPERT, Dr. SAYWARD** was placed in the U.S. Mail, postage prepaid and addressed to:

Clerk of the U.S. District Court
 District of Connecticut
450 Main Street
Hartford, CT  06103

Gene S. Winter, Esq.
ST. ONGE, STEWARD, JOHNSTON & REENS, LLC
986 Bedford Street
Stamford, CT  06905-5619

Matthew J. Becker, Esq.
DAY, BERRY & HOWARD, LLP
City Place I
Hartford, CT  06103-3499

                                        (Originally Duly Executed by Michael G. Cooksey)