IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NETKEY, INC. | ) |
| | ) |
| Plaintiff | ) |
| | ) Civil Action No. 00 CV 1364(AVC) |
| v. | ) |
| | ) |
| NETSHIFT SOFTWARE, LTD., | ) |
| AUTOMOBILE CLUB OF HARTFORD, | ) |
| MONTEGONET, LLC, | ) |
| | ) |
| Defendants/Counter-Claimants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TIMOTHY DAW AS AN EXPERT WITNESS AND MOTION TO STRIKE SAME; AND OPPOSITION TO DEFENDANTS' CROSS-MOTION TO STRIKE PLAINTIFF'S EXPERT, DR. SAYWARD**

Pursuant to Rule 7(d) of the Connecticut Local Rules of Civil Procedure, Plaintiff Netkey, Inc. ("Netkey") submits the following Reply To Defendants' Response in Opposition To Plaintiff's Motion To Exclude Timothy Daw As An Expert.

In their Response, Defendants assert that Netkey's Motion to Exclude Timothy Daw is untimely as the deadline for filing dispositive motions in this case has passed. Netkey disagrees as this Motion is not a dispositive motion and is appropriately filed at this time with trial approaching in slightly more then two months. This is the time to file motions in limine, just as Defendants have recently done in filing a Motion in Limine Re: Statements In Trial By Plaintiff's Counsel Mis-Representing The Applicable Burden of Proof. (Docket #147) As

1

such, there is no basis for Defendant's request that Netkey's Motion to Exclude the Testimony of Timothy Daw be stricken as untimely.

Netkey requests that Mr. Daw's testimony be deemed inadmissible as it does not meet the requirements of expert testimony under Federal Rule of Evidence 702. Specifically, Mr. Daw is not qualified as an expert as he does not possess the requisite degree of knowledge, skill, experience, training or education. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir 1995). Also, Mr. Daw's opinion is not reliable as he does not employ the same level of intellectual rigor of other experts in the field. *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999). These are appropriate grounds for challenging an expert's qualifications under FRE 702 in a pretrial motion. *McCullock* at 1041.

Specifically, Mr. Daw has no formal college level education in any computer-related field. He graduated with a M.A. degree in Agricultural Forest Sciences and took no computer science courses. See November 20, 2002 Deposition transcript of Timothy Charles Daw attached as Exhibit A, p. 73, line 20 to p. 74, line 2, p. 80, lines 12-16; *See also* Curriculum Vitae of Timothy Daw, attached as Exhibit B. Mr. Daw asserts he is an expert by his own designation in internet kiosk systems and achieved this status by the end of May of 1996, Exh.A, p. 101, line 18 to p. 102, line 7. Mr. Daw asserts that he became an expert over a two-month period, from April to June 1996 and admits that such knowledge did not include knowledge of source code. *Id*. He says that he accomplished expert status by studying Netkey's kiosk product. Exh. A, p. 100, lines 21-25.

Mr. Daw has never done any expert consulting work outside his job at

2

NetShift and its predecessor, Daw Systems Limited. Exh. A, p. 109, lines 21-24. He has never before served as an expert in a case and his alleged expertise in evaluating infringement of patent claims was prompted solely by this case. Exh.A, p. 113, lines 11-16; p. 119, lines 2-8. Mr. Daw is not an "independent" expert who could act as an expert witness in any other case, as his employment contract with NetShift prevents him taking external work without its approval. Exh.A, p. 122, lines 18-23. Mr. Daw has never authored any scientific journal articles. Exh.A, p. 113, lines 22-25. Mr. Daw has never taught any courses in the field of computer science. Exh. A, p. 124 lines 21-23. These facts show that Mr. Daw is not qualified as an expert with experience, training, education, and higher knowledge in computer science and specifically kiosk systems, including source code used therein. Also, Mr. Daw's experience does not rise to a level which would render his expert opinion reliable. His knowledge base and methods of applying facts (of this case) to his knowledge base have not been the subject of peer review, for instance, through the publication of papers or participation on a faculty, to ensure he employs sound methodology which would be widely accepted by those in the field.

Netkey believes Mr. Daw's qualifications are clearly so insubstantial to render a decision to exclude his expert opinion at this time. Alternatively, Netkey has requested that the Court conduct voir dire of Defendants' expert witness Timothy Daw at the start of trial in order to determine whether or not he is qualified as an expert and his testimony should be allowed at trial.

In their Response, Defendants have cross-moved to strike Plaintiff's expert, Dr. Sayward, the basis for which appears to be alleged bias as a "personal and social friend of Gene S. Winter, Plaintiff's lead counsel."

(Opposition ¶5) Defendants have not address the appropriate grounds, such as qualifications and reliability of opinion, for excluding expert testimony under FRE 702. As such, Defendants' Cross-Motion to Strike should not be entertained with regard to Dr. Sayward.

In fact, Defendants cannot dispute Dr. Sayward's qualifications which have been clearly set forth in his Expert Report and in his Declaration submitted with Netkey's Opposition to Defendants' Motion for Summary Judgment Specifically, Dr. Sayward has been developing software systems for over 35 years and has acquired detailed knowledge and information on the development of software systems in the United States. *See* Declaration of Frederick Sayward, (Docket # 88) p. 3, attached to Netkey's Opposition to Defendants' Motion for Summary Judgment (Doc. 90) filed February 14, 2003. Dr. Sayward holds a PhD in Computer Science. *See* Curriculum Vitae of Dr. Sayward attached hereto as Exhibit C. He has taught introductory and advanced courses while part of Computer Science faculty at Yale University. Sayward Decl. p .3. Dr. Sayward has studied the design of several kiosk systems which emerged during the last part of the 1990's. Sayward Decl., p. 4. In his Expert Report, Dr. Sayward sets forth his experience in detail:

> I have been developing software systems for 35 years. My first experiences were as a scientific programmer 1967-71 on Project SafeGuard, the United State's first antimissile research project. Following Graduate School, I was an Assistant Professor at Yale University 1976-81, where my research focused on Program Testing and on Software Metrics. During this period I was a co-inventor of the Program Mutation Testing Technique that subsequently became a US Department of Defense testing standard in use to this day. Also, I co-edited a book on Software Metrics that became the primary reference for researcher in this area during the 1980's and early 1990's.

4

From 1981 to 1992, I was employed in US industry in a management capacity. I supervised the design and implementation of very large software systems in the telecommunications industry (telephone switches) and in the garment industry (design and factory automation of clothing systems). One project that I headed, a CAD system for clothing design and manufacture, involved assembling and managing a team of 30 software engineers.

Following two years of intense teaching and contract programmer jobs in networking systems and databases, I have been associated with Yale Medical School from 1994 to present. As a researcher in medical related software development, I have developed a variety of software on a variety of computing platforms, most notably the IMM/Serve software package that is used by the Indian Health Service, the State of Oregon, and the Commonwealth of Virginia for forecasting childhood immunization schedules for the children of those constitutes. This package consists of over 15,000 lines of portable ANSII C code written and maintained entirely be me, which executes on over 10 varieties of Unix and MS Windows platforms.

Recently I have been assigned the tasks of automating the biological laboratory sample tracking in a network database and of automatically programming the lab robots from that database, for the Yale University Human Genome Project.

Frederick Sayward Expert Witness Report, p. 1, attached as Exhibit 3 to Defendants' Memorandum in Support of Motion for Summary Judgment (Docket # 76) filed December 17, 2002. Clearly Dr. Sayward has shown the requisite qualifications and reliability of opinion which Defendants cannot dispute. Hence, Defendants' Cross-Motion to Strike Dr. Sayward should be denied.

Respectfully submitted,

3/19/04
Date

*Gene S. Winter*
Gene S. Winter, ct05137
Helen M. Limoncelli, ct24332
St. Onge Steward Johnston & Reens LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096

Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing **REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'A MOTION TO EXCLUDE TIMOTHY DAW AS AN EXPERT WITNESS AND MOTION TO STRIKE SAME; AND OPPOSITION TO DEFENDANTS' CROSS-MOTION TO STRIKE PLAINTIFF'S EXPERT, DR. SAYWARD** is being served this 19 day of March, 2004, via facsimile and first class mail, postage prepaid to:

Michael G. Cooksey, Esq.
Cooksey & Cooksey, P.A.
1700 Broadway, Suite 1700
Denver, Colorado  80290
Facsimile: (303) 860-0102

And by first class mail only to:

Karen A. Moreno
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut  06103-3499

Matthew J. Becker
Catherine Dugan O'Connor, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT  06901

3/19/04
Date

_(signature)_